UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SHAWN OLIVER ROBLIN, | No. CV 16-3739-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.

## PROCEEDINGS

Plaintiff filed this action on May 27, 2016, seeking review of the Commissioner's[1] denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on June 21, 2016, and June 23, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on February 17, 2017, that addresses their positions concerning the disputed issues in the case. The Court has taken the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on April 25, 1970. [See, e.g., Administrative Record ("AR") at 252.] He has past relevant work experience as an automobile sales clerk, and in the combination position of shoe sales clerk and assistant retail manager. [AR at 22, 89-90.]

On September 10, 2012, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since January 28, 2011. [AR at 22.] After his application was denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 22, 110-11.] An initial hearing was held on February 19, 2014, at which time the hearing was continued to afford plaintiff the opportunity to secure representation. [AR at 22, 48-55.] An additional hearing was held on September 18, 2014, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 56-95.] Plaintiff's Licensed Clinical Social Worker ("LCSW") Tanya Rishwain, and a vocational expert ("VE") also testified. [AR at 74-88, 88-92, 93-94.] On October 16, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from January 28, 2011, the alleged onset date, through October 16, 2014, the date of the decision. [AR at 22-42.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 15-16.] When the Appeals Council denied plaintiff's request for review on March 30, 2016 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  Id.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 28, 2011, the alleged onset date.[2]  [AR at 23, 41.]  At step two, the ALJ concluded that plaintiff has the severe impairments of obsessive-compulsive disorder (alternatively "OCD") and

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act on his alleged onset date of January 28, 2011, and continued to meet them through October 16, 2014, the date of the decision.  [AR at 23, 40.]

4

depression. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform work at all exertional levels, "but is limited to simple repetitive tasks, to occasional peer contact and to no interaction with the public." [AR at 23; see also AR at 41.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of his past relevant work as an automobile sales clerk, or in the combination position of shoe sales clerk and assistant retail manager. [AR at 39, 41, 89-91.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "mail room clerk" (Dictionary of Occupational Titles ("DOT") No. 209.687-026), and "cleaner, industrial" (DOT No. 381.687-018). [AR at 40, 41, 91-92.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 28, 2011, through October 16, 2014, the date of the decision. [AR at 40, 41.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) considered plaintiff's subjective symptom testimony; and (2) assessed plaintiff's RFC. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

**A.    SUBJECTIVE SYMPTOM TESTIMONY**

**1.    Legal Standard**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

credible, an ALJ must engage in a two-step analysis."[4] Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter, 504 F.3d at 1036) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins, 466 F.3d at 883), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of his symptoms. Treichler, 775 F.3d at 1102; Benton v.

---

[4] On March 28, 2016, after the ALJ's assessment in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Id. at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The ALJ's October 16, 2014, decision was issued before March 28, 2016, when SSR 16-3p became effective, and there is no binding precedent interpreting this new ruling including whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision); see also Smolen, 80 F.3d at 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993) (because regulations were intended to incorporate prior Social Security Administration policy, they should be applied retroactively)). Here, SSR 16-3p on its face states that it is intended only to "clarify" the existing regulations. Plaintiff also argues that it applies to the ALJ's decision [JS at 6 & n.4] and defendant offers no opinion. [But see JS at 11 (citing SSR 96-7p).] However, because the ALJ's findings regarding this issue fail to pass muster irrespective of which standard governs, the Court need not resolve the retroactivity issue. Notwithstanding the foregoing, SSR 16-3p shall apply on remand.

Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).

Where, as here, a claimant has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering,[5] the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing.  Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015).  "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted).  The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'"  Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 345-46 (9th Cir. 1991) (en banc)).  A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain."  Bunnell, 947 F.2d at 346.  As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient.  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

**2.    Analysis**

The ALJ's decision consists of a very thorough summary of the medical evidence and testimony, after which he lists his "Findings" pursuant to the five-step evaluation process.  [AR at 22-40.]  With respect to plaintiff's subjective symptom testimony, the ALJ found plaintiff's

---

[5] Malingering is a term of art defined by the American Psychiatric Association as the "intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work obtaining financial compensation, evading criminal prosecution, or obtaining drugs."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 683 (4th ed. 2000).  The ALJ did not make a specific finding that plaintiff was a malingerer or that there was affirmative evidence of malingering in the record.  Instead, he merely postulated that the evidence "suggests [plaintiff] could work in some competitive environment . . . [and the comments of treating sources] and the evidence at large, suggests to the ALJ, a lack of motivation and desire for work that is not fully explained by [plaintiff's] mental impairments."  [AR at 24.]

allegations credible "only to the extent they are consistent" with the RFC to work "at all exertional levels, [with limitations] to simple repetitive tasks, no interaction with the public, [and] occasional contact with peers." [AR at 41.]

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 4.] Specifically, plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons in finding plaintiff's testimony was not credible.[6] [JS at 4.]

Defendant disagrees and points to a number of things that the ALJ either "noted" or "considered" in his decision, and then provides her own rationales for the ALJ's ultimate credibility determination based on each of these items. [See, e.g., JS at 13-18.] For instance, she states that the ALJ "*noted inconsistent testimony* between Plaintiff's claims that he is too consumed by his OCD symptoms that cause him to reread what he is reading, and his statements that he cannot read or watch television, but is able to read about his condition on the Internet, able to listen to the radio for hours[7] and work in the garden." [JS at 15 (citing AR at 27).] The ALJ, however, merely recited this testimony and did *not* explicitly point out that it was inconsistent. [See AR at 27 (the ALJ simply reported plaintiff's statements that "he was not looking for work due to his OCD symptoms, indicating he was consumed by this, that cause him to re-read (but also stating he cannot read or watch TV) and blocked him from going to the gym, yet . . . he reads about his condition, listens to radio and works in the garden, working on his thoughts.").] Thus, many of defendant's arguments and the conclusions defendant drew from the ALJ's recitation of the evidence were *not* arguments or conclusions made by the ALJ, who provided a narrative summary of the evidence. [See AR at 22-40.] "Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings

---

[6] Although plaintiff contends SSR 16-3p should have applied, he nevertheless analyzes the ALJ's decision in terms of "credibility."

[7] Plaintiff actually testified that when he watches a movie he is compelled to watch it again "so [his] entertainment is very limited. One of the few things [he does] is listen to a radio show at night." [AR at 66.]

offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis added; citation omitted).

That being said, the ALJ did attempt to "link" at least some of plaintiff's subjective symptom testimony to particular parts of the record supporting his non-credibility determination. Specifically, the ALJ determined that the evidence "clearly spoke to motivational issues." [AR at 26.] He noted that plaintiff "drives safely because he has to do so"; plaintiff testified to feelings of anger yet was able to "maintain his poise so as to not upset his parents"; while driving, shopping, cooking, and doing other daily activities, plaintiff is able to "complete[] more than simple repetitive tasks"; plaintiff's need to read and reread "does not stop him from cooking for the family twice a week"; and his reading and rereading behavior "would appear to have minimal effect on simple repetitive tasks." [Id.] With regard to plaintiff's estimate that he sleeps twelve hours a day, and sometimes takes a one-hour nap after breakfast,[8] the ALJ also noted that although plaintiff had a brief period of time "where medications caused him to sleep most of the day," the fact that plaintiff drives safely, partakes in other activities, and was alert, responsive, and well-spoken at the hearing, "suggests [plaintiff] does not sleep or nap to quite the extent he claims, but, even if he does, this links to motivational issues." [AR at 26-27.] The ALJ further stated that he "does not fully or even primarily link limits in daily activities (including excessive sleeping) to mental disorders, rather than to motivational factors, including elections to stay in bed and listen to hours of talk radio." [AR at 38.] The ALJ points to no evidence from a treating provider or any other source[9] suggesting that plaintiff's behaviors are "linked" to motivational factors rather than related to his OCD and

---

[8] Because he often sleeps for twelve hours, plaintiff testified that he "sometimes take[s] a one-hour nap[] *in the afternoon* after [he has] breakfast." [AR at 66 (emphasis added).]

[9] The ALJ gave "some credence" to the assessment of the State Agency reviewing psychologist who limited plaintiff to simple repetitive tasks and superficial contact with others. [AR at 37 (citing AR at 96-105).] He noted that the State Agency psychologist, however, "completed [his] input based on an incomplete record, including lacking opinion source evidence and, of course, the testimony of [plaintiff] and Ms. Rishwain." [Id.]

depressive disorder.[10] As such, the ALJ's unsupported conclusion that plaintiff's reported activities and limitations are the result of motivational factors rather than his mental health issues, is little more than an improper lay opinion. See Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (noting that the Commissioner "'must not succumb to the temptation to play doctor and make [his] own independent medical findings'") (alteration in original).

Based on the foregoing, the ALJ did not provide "the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id. (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony") (citing Treichler, 775 F.3d at 1103; Burrell 775 F.3d at 1138).

Remand is warranted on this issue.

**B.     CONCENTRATION, PERSISTENCE, AND PACE**

Plaintiff argues that the ALJ erred when he failed to include a moderate limitation in concentration, persistence, and pace in plaintiff's RFC assessment, despite finding that plaintiff had moderate difficulties in his ability to maintain concentration, persistence, or pace. [JS at 20 (citing AR at 23); but see AR at 38 (noting that plaintiff "usually describes, and is described, with intact concentration [and] is able to maintain the concentration, persistence and pace to drive

---

[10]     The ALJ observed that a treatment note completed by plaintiff's treating psychiatrist, Dr. Agress, provided "at least indirect encouragement to [plaintiff] that he work, via statement [sic] that 'disability' would only worsen his symptoms." [AR at 30.] The Court notes, however, that this note, in relevant part, states: "Discussed risk of disability re symptoms increasing[.] He is inactive anyway with subsequent increased symptoms. . . . I noted that disability will tend to give more time for symptoms to worsen." [AR at 487.] Nowhere in this note did Dr. Agress suggest that plaintiff's symptoms were a result of a lack of motivation or that there would be a *reduction* in his symptoms if he was working. In fact, as reported by the ALJ [AR at 32], Dr. Agress also indicated in the same note his support for plaintiff's disability claim stating that such support "seems quite warranted given patient's paralysis *due to his symptoms.*" [AR at 657 (emphasis added).]

safely, do some shopping, listen to talk radio, and use the computer").] Plaintiff submits that a moderate limitation in this area is "not subsumed in the limitation to simple [repetitive] tasks with no interaction with the public and occasional contact with peers." [Id. (citing Varga v. Colvin, 794 F.3d 809, 813-14 (7th Cir. 2015)).] He contends, therefore, that this limitation should have been included in the hypothetical to the VE. [Id.]

In the RFC and hypothetical questions posed to the VE, an ALJ must include all of a claimant's restrictions. 20 C.F.R. § 404.1545. Thus, when the medical evidence establishes, and the ALJ accepts, that the claimant has moderate limitations in maintaining concentration, persistence, and pace, that limitation must be reflected in the claimaint's RFC and in the hypothetical presented to the VE. Merely limiting the claimant's potential work to "simple, repetitive work" does not sufficiently account for moderate limitations in concentration, persistence, or pace. Brink v. Comm'r of Soc. Sec. Admin., 343 F. App'x 211, 212 (9th Cir. 2009) (unpublished) ("The Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive. Indeed, repetitive, assembly-line work . . . might well require extensive focus or speed."); see also Lubin v. Comm'r of Soc. Sec. Admin., 507 F. App'x 709, 712 (9th Cir. 2013) (unpublished) ("Although the ALJ found that the [claimant] suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the [VE]."). Although Brink and Lubin are unpublished decisions by the Ninth Circuit, and therefore do not establish precedent, they are persuasive authority, which has been relied on by other district courts in this circuit.

In the published case of Lee v. Colvin, 80 F. Supp. 3d 1137, 1151 (D. Or. 2014), a district court in the Ninth Circuit followed Brink and Lubin to conclude that because the ALJ accepted that claimant had moderate restrictions as to concentration, persistence, and pace, she erred in failing "to address these specific restrictions in claimant's RFC and in her hypothetical questions" to the VE. Id. at 1150. Specifically, the ALJ's hypothetical questions only inquired about jobs for someone who can "understand, remember, and carry out only simple instructions that can be learned by demonstration" with "little variance in assigned tasks from day to day." Id. at 1151.

The district court determined that this hypothetical "did not address limitations regarding persistence or pace," because "the jobs identified by [the VE] (auto detailer, scrap metal sorter, and agricultural produce packer) may still require 'extensive focus or speed,' similar to the repetitive, assembly-line work described in Brink." Id.

Numerous unpublished district court opinions have also followed Brink and Lubin to find error when the ALJ concludes that a claimant has moderate limitation in maintaining concentration, persistence, or pace at step two, but attempts to account for this in the RFC only by limiting the claimant to simple, repetitive work. See, e.g., Sanchez v. Colvin, 2016 WL 1948782, at *5 (C.D. Cal. May 3, 2016); Willard v. Colvin, 2016 WL 237068, at *3 (C.D. Cal. Jan. 20, 2016); Bentancourt v. Astrue, 2010 WL 4916604, at *3 (C.D. Cal. Nov. 27, 2010).

The Brink and Lubin line of cases is distinguishable from the line of cases following Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008), relied on by defendant herein [see, e.g., JS at 23-24], in which the ALJ never made a finding that the claimant had moderate limitations in concentration, persistence, or pace. Rather, in Stubbs-Danielson, a physician identified claimant as having "slow pace in thought and action," but found she was still able to "follow three-step instructions." Id. at 1171. The ALJ "translated" the physician's conclusions regarding pace and mental limitations into a restriction to "simple tasks," and the Ninth Circuit found that the ALJ's translation adequately incorporated the medical evidence concerning the claimant's impairments. Id. at 1174. As a general rule, the Ninth Circuit held that an "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony." Id.

Some district courts have extended Stubbs-Danielson's reasoning to cases in which the ALJ did find moderate restrictions in concentration, persistence, and pace while employing the "special psychiatric review technique" described in 20 C.F.R. § 404.1520a, but assessed an RFC only restricting the plaintiff to simple, routine tasks. Those courts note that "the special analysis for mental disorders, which includes an assessment of concentration, persistence, and pace, is a severity analysis [performed at step two] which is distinct from the functional analysis at step five of the sequential evaluation." Phillips v. Colvin, 61 F. Supp. 3d 925, 940 (N.D. Cal. 2014).

Therefore, "the relevant question is whether the medical evidence supports a particular RFC finding" with regard to concentration, persistence, and pace. Id.; see, e.g., Wilder v. Comm'r of Soc. Sec. Admin., 545 F. App'x 638, 639 (9th Cir. 2013) (unpublished) (ALJ did not err by failing to include the step two finding that plaintiff had moderate difficulties in maintaining concentration, persistence, and pace because "the medical evidence in this record does not support any work-related limitation in [plaintiff's] ability to sustain concentration, persistence, or pace"); Bordeaux v. Comm'r of Soc. Sec. Admin., 2013 WL 4773577, at *13 (D. Or. Nov. 18, 2013) ("the ALJ did not err in omitting from the RFC assessment the specific [concentration, persistence, and pace] finding set out in the special technique . . . [and] a careful review of the medical evidence and the ALJ's decision supports the conclusion that the ALJ's RFC adequately accounted for . . . the 'less than substantial limitations in concentration, persistence and pace at simple work activities' identified by Dr. Logue"); Mitchell v. Comm'r of Soc. Sec. Admin., 2013 WL 5372852, at *5 (E.D. Cal. Sept. 25, 2013), aff'd sub nom., Mitchell v. Colvin, 642 F. App'x 731 (9th Cir. 2016) ("the special analysis for mental disorders . . . is a severity analysis which is distinct from the functional analysis at step five of the sequential evaluation") (citing Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007)[11]).

This case is more similar to Brink and its progeny than to Stubbs-Danielson. Here, the ALJ specifically accepted medical testimony regarding plaintiff's moderate difficulties in maintaining concentration, persistence, and pace [see AR at 23, 38, 103, 634, 668], but -- although the medical evidence supported his finding of moderate difficulties in maintaining concentration, persistence, and pace -- he failed to incorporate into the RFC or into the hypothetical to the VE the moderate difficulties he had specifically identified. He also failed to provide an explanation as to how a restriction to simple and repetitive unskilled work accounted for plaintiff's moderate

---

[11] In Hoopai, the issue before the court was whether the ALJ's finding that the plaintiff had severe mental impairments at step two precluded the ALJ from utilizing the grids at step five to find that the plaintiff was not disabled. Hoopai, 499 F.3d at 1076. That is not the issue herein. Moreover, Hoopai does not address the issue of whether the ALJ was required to include his finding of moderate limitations in his assessment of plaintiff's RFC and whether, as argued by defendant [JS at 22-26], a limitation to simple and repetitive tasks incorporates such a finding.

13

difficulties in concentration, persistence, or pace. Thus, it was error for the ALJ to fail to include plaintiff's moderate difficulties in concentration, persistence, or pace in the RFC. Remand is also warranted on this issue.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Next, the ALJ on remand shall reassess plaintiff's RFC in light of his moderate difficulties in maintaining concentration, persistence, or pace. Finally, the ALJ shall determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing

in significant numbers in the national economy that plaintiff can still perform.[12]

## VII.
## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 13, 2017

　　　　　　　　　　　　　　　　　　　　/s/ Paul L. Abrams
　　　　　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

---

[12] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.